**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:19CV-00392-RSE**

**JENN R. BENITEZ**                                                                                    **PLAINTIFF**

**VS.**

**ANDREW SAUL,**
*Commissioner of Social Security*                                                   **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

The Commissioner of Social Security denied Jenn R. Benitez's application for supplemental security income benefits. Benitez seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Benitez (DN 20) and the Commissioner (DN 26) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 14).

<u>I. Background</u>

Jenn R. Benitez is 48 years old and suffers from a host of physical and mental health conditions. Since 2014, she has undergone multiple procedures, including several abdominal surgeries, an appendectomy, bladder surgery, a cholecystectomy, a colonoscopy, an endoscopy, hand surgery, knee surgeries, and shoulder surgeries. (Tr. 46). She also claims memory problems, cognitive impairments, generalized anxiety, depression, and post-traumatic stress disorder.

At the time of her administrative hearing, she lived in the basement of her ex-boyfriend's house in Radcliff, Kentucky, whom she claims verbally, mentally, and emotionally abused her.

(Tr. 49, 58). She continued to live with him despite the abuse because she had no money, had nowhere else to go, and believed her health was "too bad" to fight illnesses in a homeless shelter. (Tr. 56). Benitez has a GED and previously worked as an animal attendant at a pet resort in 2014 and 2015 and in media at a call center in 2013 and 2014 but states that she does not remember what she did at either job. (Tr. 52-53). Benitez accidentally assaulted someone in December of 2017 after being triggered by something the person said. (Tr. 54-55). She recently stopped treating with her psychiatrist because the psychiatrist blocked her exit and got into her personal space, which made Benitez feel her safety was in danger. (Tr. 56).

Benitez applied for supplemental security income benefits ("SSI") under Title XVI, claiming she became disabled on November 19, 2014 (Tr. 266), as a result of "fibromyalgia, emphysema, CHF, cardiomyopathy, bullous disease, arthritis in the hands and feet, osteoarthritis, interstitial cystitis, PTSD, depression, and anxiety" (Tr. 77-78, 103-04, 316). Her application was denied initially (Tr. 100) and again on reconsideration (Tr. 125). Administrative Law Judge Steven Collins ("ALJ Collins") conducted a hearing in Louisville, Kentucky, on January 25, 2018. (Tr. 42). Benitez attended the hearing with her attorney. (*Id.*). An impartial vocational expert also testified by telephone at the hearing. (*Id.*). ALJ Collins issued an unfavorable decision on August 1, 2018. (Tr. 31).

ALJ Collins applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Benitez has not engaged in substantial gainful activity since August 26, 2015. (Tr. 17). Second, Benitez has the severe impairments of "left shoulder degenerative joint disease, status-post left rotator cuff repairs, cervical spondylosis, lumbar degenerative disc disease, migraine headaches, emphysema, seizure disorder, Factor V Leiden

2

thrombophilia, interstitial cystitis, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder." (Tr. 18). Third, none of Benitez's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 19). Between the third and fourth steps, ALJ Collins found Benitez has the residual functional capacity to perform "sedentary work" with the following limitations:

> she could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could never climb ladders, ropes, and scaffolds. She could occasionally push/pull and reach overhead with the left upper extremity. She must avoid concentrated exposure to vibration, fumes, odors, dusts, gases, and poor ventilation. She must avoid all exposure to hazards. She could perform only simple, routine tasks with simple work-related decisions and few, if any, workplace changes. She could have only occasional interaction with supervisors, coworkers, and the public.

(Tr. 20). Fourth, Benitez is unable to perform any of her past relevant work. (Tr. 29). Fifth and finally, considering Benitez's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*).

Based on this evaluation, ALJ Collins concluded that Benitez was not disabled, as defined in the Social Security Act, from August 26, 2015 through the date of the decision. (Tr. 30). Benitez appealed ALJ Collins' decision. The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Benitez sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial

evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Analysis

Benitez raises a single challenge to ALJ Collins' decision – that ALJ Collins failed to weigh the opinion evidence of record in accordance with the proper legal standards, resulting in an RFC determination not supported by substantial evidence. (DN 20-1, at p. 10). Specifically, Benitez takes issue with ALJ Collins affording "little weight" to Dr. Lynch's 2018 consultative opinion. (*Id.*). The Commissioner responds that ALJ Collins gave well-reasoned explanations for the weight he assigned to the opinion evidence.[1] (DN 26, at p. 1).

The residual functional capacity finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases his residual functional capacity

---

[1] Much of the Commissioner's "Introduction" section includes information inaccurate to Benitez's case. For instance, the Commissioner incorrectly states Benitez's disability onset date, conditions causing disability, education level, and previous work. (DN 26, at pp. 1-2 ("Plaintiff . . . alleg[es] disability beginning on February 1, 2014 (later amended to April 28, 2015), due to fibromyalgia, degenerative disc disease, plantar fasciitis, depression, anxiety, and irritable bowel syndrome (Tr. 345). Plaintiff had a limited (11th grade) education, and previously worked as a warehouse packager, warehouse worker, and delivery driver (Tr. 346)). The Commissioner also incorrectly states the hearing date and the date ALJ Collins issued his decision. (*Id.* at p. 2).

Despite the Commissioner's incorrect rendering of the facts of Benitez's case, it is apparent from the Commissioner's brief that he is responding to the legal arguments Benitez presented in her Fact & Law Summary. And while the Commissioner's error is glaring, the Court bases its analysis of Benitez's claims of error on a review of the entire record in the case, not the parties' factual recitations.

finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The regulations require administrative law judges to evaluate every medical opinion in the record.  20 C.F.R. 404.1527(c).  The weight an administrative law judge assigns to a consultative opinion depends on a variety of factors, including whether the source actually treated the claimant, the supportability of the source's opinion, and the consistency of the opinion compared with the record as a whole, among other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). In other words, consultative opinions may be credited when they are supported by the record. *Kepke v. Comm'r of Social Sec.*, 636 F. App'x 625, 633 (6th Cir. Jan. 12, 2016) (quoting *Price v. Comm'r of Social Sec.*, 342 F. App'x 172, 177 (6th Cir. Aug. 18, 2009)).

In this case, Dr. Lynch performed two consultative examinations of Benitez. The first was on December 1, 2015 (Tr. 686), and the second was over two years later, on March 13, 2018 (Tr. 4092). During the first examination, Dr. Lynch observed that Benitez had normal memory functioning, appropriate affect, depressed mood, generally appropriate thought content, an average fund of knowledge, adequate judgment, and normal decision-making ability. (Tr. 689-90). Dr. Lynch concluded after examination that:

> The claimant's capacity to understand, remember, and carry out instructions towards performance of simple repetitive tasks seems affected by the impairment with slight limitations noted. Her ability to tolerate stress and pressure of day-to-day employment seems affected by the impairment with moderate limitations noted. Her capacity to sustain concentration towards performance of simple repetitive tasks seems affected by the impairment with slight limitations noted. Her capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting seems affected by the impairment with moderate limitations noted.

(Tr. 691).

In 2018, during the second examination, Dr. Lynch observed Benitez's slowed overall motor activity, distractible attention, adequate cooperation but "dramatic" presentation, restricted

5

affect, adequate judgment, problematic decision-making ability, and evasiveness. (Tr. 4094-96). Dr. Lynch performed additional testing during the 2018 exam, including the Wechsler Adult Intelligence Scale, Wide Range Achievement Test, Rey 15-Item Test for Malingering, and the Wechsler Memory Test. Benitez generally received low results on these tests, but Dr. Lynch found the scores did not reveal deficits in memory functioning and seemed generally consistent with her educational and occupational histories. (Tr. 4099). Based on this examination, Dr. Lynch concluded that Benitez's limitations were the same as in 2015, except that her "capacity to sustain concentration towards performance of simple repetitive tasks" was now moderately limited and her "capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting" was now moderate to markedly limited. (Tr. 4100).

Dr. Lynch also completed a check-box evaluation on Benitez's "ability to do work-related activities (mental)" and noted moderate limitation on Benitez's ability to interact appropriately with the public and supervisors and moderate and marked limitation on her ability to interact appropriately with co-workers and respond appropriately to usual work situations and changes in a routine work setting. (Tr. 4102). Dr. Lynch noted that Benitez's "anxiety, depressed mood, irritability, hypervigilance, and avoidance" support these limitations. ALJ Collins gave great weight to Dr. Lynch's 2015 opinion because it was "generally consistent with the medical evidence of record" (Tr. 28) but gave "little weight" to Dr. Lynch's 2018 opinion, finding that marked limitations were "inconsistent with the only moderately impaired mental status examinations, wholly conservative mental health treatment, and reported activities of daily living." (*Id.*).

Benitez argues that ALJ Collins erred in evaluating Dr. Lynch's later opinion because: (1) her condition clearly declined between Dr. Lynch's examinations, as noted by the objective findings in the 2018 examination; (2) Dr. Lynch's second opinion was based on additional testing

that revealed her difficulties sustaining attention and concentration; (3) he failed to provide appropriate reasons for discounting the opinion; (4) he relied on Benitez's alleged lack of more aggressive treatment; and (5) he mischaracterized and inappropriately relied on her daily activities. Benitez also feels it is "impossible" to discern how ALJ Collins determined she had no limitations in concentration, persistence, and pace when Dr. Lynch opined moderate limitations in this area. The Commissioner argues that ALJ Collins supported his RFC determination with citations to substantial evidence within the record and "thoughtfully and extensively addressed the medical opinion evidence." (DN 26, at pp. 4-5).

After reviewing ALJ Collins' decision and Benitez's treatment records for her mental impairments, the Court concludes that ALJ Collins' rendering of "little weight" to Dr. Lynch's 2018 evaluation, specifically his "moderate to marked" restrictions, is supported by substantial evidence in the record. Benitez's medical records between Dr. Lynch's 2015 and 2018 examinations do not reveal significant changes in her mental impairments. While occasionally physicians at Intensive Health observed Benitez as depressed, having flat affect, being increasingly stressed, and needing coping strategies to deal with her circumstances (*see* Tr. 2980, 2986, 3001), for the most part she was observed as having normal mood and affect, being pleasant, calm and cooperative, and being in no acute distress on exam (Tr. 2977, 2980, 2986, 2990, 2999, 3002, 3006, 3007). At psychiatric visits in July and August of 2016, she presented as depressed and sad and exam revealed that she was hypertalkative, had difficulty with goal-directed thought patterns, compromised insight and judgment, compromised ability to keep attention and concentration, inappropriate affect, and labile mood. (Tr. 2540, 2544-46). But during a therapy appointment the next month Benitez reported that things "seemed [to be] going okay" and she presented much more positively than her prior appointments. (Tr. 2548).

ALJ Collins also cites to many of Benitez's records from visits with physicians for her physical ailments, where providers generally found Benitez's judgment and insight were intact, mood was normal, and affect was appropriate on June 2, 2016 (Tr. 2587-88), June 9, 2016 (Tr. 2594-95), July 22, 2016 (Tr. 2597-98), September 9, 2016 (Tr. 2600-01), November 3, 2016 (2605-06), and November 8, 2016 (Tr. 2607-08). The same observations were made during cursory psych exams when Benitez presented for left shoulder follow-up at Elizabethtown Orthopedic Associates on December 27, 2016 (Tr. 2847), January 24, 2017 (Tr. 2850), March 16, 2017 (Tr. 2853), April 27, 2017 (Tr. 2856), and May 9, 2017 (Tr. 2862). Again, while some records demonstrated mild distress, anxious demeanor, and expansive affect (Tr. 2772, 2910, 2915), these cursory psych exams were generally unremarkable.

The Court further finds that ALJ Collins did not fail to provide "appropriate reasons" supported by substantial evidence to discount Dr. Lynch's second opinion. As outlined above, since Dr. Lynch is a consultative examiner, ALJ Collins was only required to credit his opinion if it was supported by the record. ALJ Collins was not required to undertake an exhaustive analysis of the factors in 20 C.F.R. §§ 404.1527(c). ALJ Collins stated that the marked limitations opined by Dr. Lynch in 2018 were "inconsistent with the only moderately impaired mental status examinations, wholly conservative mental health treatment, and reported activities of daily living." (Tr. 28).

This reliance on Benitez's wholly conservative treatment and reported daily activities to discount Dr. Lynch's limitations was not error. Earlier in his RFC determination, ALJ Collins explained that Benitez has treated with medications that seem to have been effective over time and participated in outpatient counseling and therapy. ALJ Collins also noted that Benitez did not report significant side effects from her medication, has noted improvement in her symptoms with

8

medication, and there has been no significant adjustment in her medication over time. (Tr. 27). Although the phrase "wholly conservative treatment" implies that Benitez did not require more aggressive treatment, such as an inpatient hospitalization, this is an accurate assessment of her mental health treatment. It was reasonable for ALJ Collins to consider Benitez's less invasive treatment of medication and counseling in rejecting Dr. Lynch's moderate and marked limitations.

Similarly, ALJ Collins earlier in his RFC identified several "daily activities" inconsistent with Dr. Lynch's restrictions, including Benitez caring for her personal needs, preparing simple meals occasionally, driving occasionally, shopping occasionally, managing her medical care, paying bills, watching television, playing games, using the internet, spending time with friends and family, dealing appropriately with authority, and living with others. The Sixth Circuit has cautioned against viewing a limited list of daily activities alone as evidence of non-disability, particularly when evaluating mental limitations. *See Rogers-Martin v. Comm'r of Soc. Sec.*, No. 1:13-cv-544, 2014 WL 2695491, at * (S.D. Ohio June 13, 2014) (citing *Gayheart*, 710 F.3d at 377)). But ALJ Collins did not consider Benitez's reported daily activities alone in discounting Dr. Lynch's opinion. It was one factor in his analysis. And earlier in his RFC determination ALJ Collins negatively assessed her credibility based partly on this same list of activities and its inconsistency with her mental status examinations.

As for Benitez's allegation that ALJ Collins mischaracterized her daily activities, much of the record includes inconsistent information from Benitez as to her abilities. In her 2015 and 2016 function reports, she stated that she doesn't spend time with others (Tr. 300, 340); yet, those same reports reflect that family and friends assist her with bathing, shopping, and cooking (Tr. 297-98, 339). And although she reported that she is no longer interested in being social, she stated in her 2016 function report that she does not have any problems getting along with family, friends,

neighbors, or others. (Tr. 340). Likewise, Dr. Lynch's 2015 examination reflected that she visited with her mother, daughter, and friends several times a month (Tr. 688), and his 2018 examination revealed she was seeing friends once or twice a week (Tr. 4094). While she repeatedly reported difficulty completing housework and needing assistance with grooming, in 2015 she was showering or bathing three times a week and brushing her teeth daily. (Tr. 688). Then, in 2018, she reported only "rare" baths or showers. (Tr. 4094). Benitez reported several times in 2015 that she could drive a car occasionally (Tr. 299, 338) but that in 2016 a doctor had ordered her not to drive (Tr. 370). Then it appears that she drove herself to her exam with Dr. Lynch in 2018, accompanied by a friend. (Tr. 4092). She also repeatedly noted recreational activities of watching television, using the internet, and spending time with her pet dogs. While ALJ Collins may have somewhat overstated that Benitez has a "wide variety of daily activities," he did not mischaracterize Benitez's reported activities. Her function reports and reports to Dr. Lynch demonstrate that she maintained some daily activities contradictory to a finding of total disability. Accordingly, it was appropriate for ALJ Collins to consider Benitez's inconsistent activity reports, among other factors, in rejecting the moderate and marked limitations in Dr. Lynch's 2018 opinion.

Nor does the additional testing performed by Dr. Lynch during his 2018 evaluation support Dr. Lynch's moderate to marked restrictions from the 2018 evaluation. While it is true that Dr. Lynch performed a battery of tests during the later examination that Benitez generally received low results on, he found the scores "did not reveal deficits in memory functioning." (Tr. 4099). These findings do not undercut ALJ Collins' determination that Dr. Lynch's moderate to marked restrictions were entitled to little weight.

Finally, contrary to Benitez's assertions, ALJ Collins followed a clear path in determining she had no limitations in concentration, persistence, and pace in her ability to perform work.

Benitez states that Dr. Lynch opined moderate limitations in this area. But those moderate restrictions were only in his 2018 opinion, which ALJ Collins afforded little weight. The Court has previously found that ALJ Collins' assignment of little weight to Dr. Lynch's later opinion is supported by substantial evidence in the record and comports with the applicable regulations. Dr. Lynch's 2015 opinion, given great weight by ALJ Collins, stated that while Benitez's capacity to sustain concentration towards performance of simple repetitive tasks seems affected by the impairment, only "slight limitations" were noted. (Tr. 28 (citing Tr. 691)). It was not inconsistent for ALJ Collins to then omit any specific limitation as to Benitez's concentration, persistence, and pace in her RFC determination.

Benitez notes briefly that ALJ Collins' decision "found moderate limitation concentrating, persisting, and maintaining pace, citing in part Dr. Lynch's notations that Plaintiff was distracted and preoccupied." (DN 20-1). pp. 14-15). This finding was part of ALJ Collins' Step Three analysis. District courts within this Circuit have held that an ALJ is not required to include Paragraph B or C findings from Step Three into his or her RFC determination. *See Allen v. Colvin*, No. 3:15-00947, 2016 WL 7664310, at *4 (M.D. Tenn. Nov. 17, 2016) ("[A]bsent any cases to the contrary, the ALJ did not err by not incorporating his concentration, persistence, and pace conclusions at step three into his RFC assessment."); *Pinkard v. Comm'r of Soc. Sec.*, 1:13cv-1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (ALJ was correct in finding claimant had moderate limitations in concentration, persistence, and pace at Step Three but not including a corresponding limitation in his RFC). This is because the RFC formulated at Steps Four and Five "requires a more detailed assessment," wherein the ALJ itemizes "the various functions contained in the broad categories found paragraphs B and C." *Hayman v. Berryhill*, No. 3:16-cv-01998, 2017 WL 9476860, at *10 (N.D. Ohio Oct. 30, 2017) (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184,

11

at *4 (July 2, 1996)). ALJ Collins, therefore, was not required to include a corresponding limitation as to Benitez's concentration, persistence, and pace in his RFC finding simply because he concluded she had moderate limitation in this area at Step Three.

For these reasons, the Court finds ALJ Collins' decision is supported by substantial evidence and comports with the applicable regulations.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.** This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge

United States District Court

Copies:          Counsel of Record

August 19, 2020